IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EDUCATIONAL CREDIT                          )
MANAGEMENT CORPORATION,                      )
                                             )
                    Appellant,               )
                                             )
        v.                                   )        Case No. 20-cv-1247-JWL
                                             )
JEFFREY THERON GOODVIN,                      )        Bankr. Adv. Case No. 19-5105
                                             )        Bankr. Case No. 19-10623 (Ch. 7)
                    Appellee.                )
                                             )
_____)

## MEMORANDUM AND ORDER

After he filed for Chapter 7 bankruptcy, debtor Jeffrey Goodvin initiated in the

bankruptcy court an adversarial proceeding against the United States Department of

Education (DOE) and defendant Educational Credit Management Corporation (ECMC),

by which Mr. Goodvin sought discharge of certain student loans held by DOE and ECMC

pursuant to 11 U.S.C. § 523(a)(8).  That statutory provision excepts from discharge in

bankruptcy any debt from an educational loan unless such exception would impose an

"undue hardship" on the debtor.  *See id.*  On July 15, 2020, the bankruptcy court conducted

a trial at which the parties offered documentary evidence and stipulations of fact and at

which Mr. Goodvin testified.  On September 1, 2020, the bankruptcy court issued a written

opinion in which it made various findings of fact; concluded that Mr. Goodvin had shown

the necessary "undue hardship"; and partially discharged the student loan debt, specifically

discharging Mr. Goodvin's debt on a 1992 consolidation loan held by ECMC, but excepting from discharge the debt on ECMC's other loan and on DOE's loans.

ECMC now appeals that decision to this Court. ECMC challenges particular findings of fact relating to Mr. Goodvin's expenses, and it argues that the bankruptcy court erred in concluding that Mr. Goodvin satisfied the undue-hardship standard. ECMC also argues that, if that standard is deemed satisfied, the bankruptcy court abused its discretion in discharging only the debt on one loan instead of spreading the partial discharge among all debts on a pro rata basis. For the reasons set forth below, the Court rejects ECMC's arguments, and it therefore **affirms** the bankruptcy court's partial discharge.[1]

### I.    Standard of Review

The Court reviews the bankruptcy court's legal determinations de novo, and it reviews that court's factual findings under a clearly erroneous standard. *See Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.)*, 82 F.3d 956, 959 (10th Cir. 1996). "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, [the reviewing court is] left with the definite and firm conviction that a mistake has been made." *See id.* (citation omitted). "Whether a debtor's student loans would impose an 'undue hardship' under 11 U.S.C. § 523(a)(8) is a question of law." *See ECMC v. Polleys*, 356 F.3d 1302, 1305 (10th Cir. 2004) (citation omitted). "[That

---

[1] The Court concludes that the facts and legal arguments have been adequately presented in the parties' briefs and the record of the case and that the decisional process would not be significantly aided by oral argument; accordingly, the Court denies ECMC's request for oral argument in this appeal. *See* Fed. R. Bankr. P. 8019.

question] requires a conclusion regarding the legal effect of the bankruptcy court's finding as to the debtor's circumstances, and is therefore reviewed de novo." *See id.* (citation omitted).

## II.        Challenge to the Bankruptcy Court's Findings of Fact

The bankruptcy court made various findings of facts concerning Mr. Goodvin's circumstances.  The parties do not challenge the findings concerning Mr. Goodvin's loans, which the Court summarizes here.  Two of the loans are held by ECMC:  (1) a 1992 consolidation loan in the amount of $12,077, accruing interest at 9% in the amount of $372 per month, on which Mr. Goodvin has paid $19,527, but on which he owes (as of the time of trial) $49,581; and (2) a 2009 Stafford loan in the amount of $3,500, accruing interest at 6% in the amount of $11 per month, on which he has paid $2,290, but on which he owes $2,147.  DOE holds five other loans, made over the period from 2009 to 2012 in the total amount of $23,500, with rates ranging from 3.4% to 6.8%, on which Mr. Goodvin has paid $6,256, but on which he now owes $25,541.  In total, Mr. Goodvin owes $77,270 on his student loans, which are accruing interest at a rate of $503 per month.  His most recent monthly payments totaled approximately $400.  If all of the loans were consolidated, he would have a monthly payment of $434, and he could repay the loans completely over periods of 10, 20, or 30 years with monthly payments of $931, $640, and $560, respectively.

The findings concerning Mr. Goodvin's work history and income are also essentially unchallenged.  Mr. Goodvin, age 57 at the time of trial, is single and has no

dependents.  He has generally worked in television news, but he has often lost jobs and relocated to find work.  The fault for that itinerant career is not his own, and he has consistently tried to maximize his income within his field.  He is now in the second year of a union HVAC apprenticeship program, and his present and future earnings are determined by the union scale.  At the time of trial, his net monthly income was $2,556. He will achieve full journeyman status in three years, at which time his gross income will be approximately 66% higher than at present.  He testified that he plans to retire in ten years at age 67, at which time he will have a much lower income, consisting of his pension and social security, with access to one small retirement account.

ECMC does challenge the bankruptcy court's findings concerning Mr. Goodvin's expenses.  That court found that Mr. Goodvin had $2,347 in monthly expenses, leaving $209 per month in disposable income with which to make student loan payments.  First, ECMC argues that the bankruptcy court allowed various expenses as "reasonable" without expressly finding that those expenses represented a minimal standard of living, as required by the applicable test for undue hardship (described below).  The Court rejects this argument.  The bankruptcy court explicitly applied the test that requires reference to a minimal standard of living, and it even titled one section of its opinion discussing Mr. Goodvin's expenses as "Minimal Standard of Living."  In addition, the bankruptcy court found that Mr. Goodvin has "lived a lifestyle far removed from excess."  The Court thus reviews the bankruptcy court's findings concerning expenses as having been found to represent a minimal standard of living for Mr. Goodvin.

4

ECMC notes that the bankruptcy court's finding of $2,347 in monthly expenses exceeds Mr. Goodvin's own estimates contained in his amended Schedule J from September 2019 ($2,195) and in his interrogatory answers from December 2019 ($2,328), even after accounting for an increase of $21 by the time of trial for Mr. Goodvin's mortgage payment.[2]  In its opinion, the bankruptcy court found that the discrepancies among the amounts claimed by Mr. Goodvin were negligible, and it then proceeded to work from the amended Schedule J, with the exception of the expenses for food and household, for which it used the interrogatory answer's figure.  The court did disallow one expense of $22 for the care of Mr. Goodvin's mother, based on his testimony that he only offered her non-monetary aid.  This approach by the bankruptcy court is not clearly erroneous.  All of the expense items allowed by the court had evidentiary support in the amended schedule, the interrogatory answers, and Mr. Goodvin's testimony.

ECMC challenges only two specific expense items found by the bankruptcy court. First, ECMC argues that the bankruptcy court clearly erred in allowing Mr. Goodvin $550 per month for a minimal amount of food and household expenses.  In the interrogatory answer from which this figure was taken, Mr. Goodvin claimed $350 for groceries and household and $200 for dining out.  ECMC notes that Mr. Goodvin wouldn't be eating out as much at present and going forward because he was temporarily working away from home at that time.  Mr. Goodvin testified, however, that his household expense would then

---

[2] ECMC also notes that a $300 expense for lodging (while working away from home) that was included in the interrogatory answer was no longer applicable by the time of trial, but the bankruptcy court did not include any such expense in its itemized total.

be higher while he was living primarily at home.  Thus, there is support in the evidence for

this expense amount.  ECMC suggests that $550 is simply too high to represent the

"minimal standard of living" for a single person, but the Court defers to the bankruptcy

court's finding on that issue.[3]

Second, EMCM challenges the bankruptcy court's allowance of $125 per month for

personal care expenses.  ECMC argues in its brief that Mr. Goodvin claimed only $12 in

the amended schedule and nothing in the interrogatory, with no supporting trial testimony.

That is incorrect, as Mr. Goodvin actually claimed $125 in the amended schedule, and thus

there is support for that finding.  Moreover, ECMC failed to challenge that particular

expense in the bankruptcy court, and as ECMC itself has argued, matters not presented to

the trial court should not be considered on appeal.  *See United States v. Immordino*, 534

F.2d 1378, 1381 (10th Cir. 1976).

The bankruptcy court's factual findings are entitled to deference by this Court on

appeal, and that court's findings concerning Mr. Goodvin's monthly expenses while living

a very modest lifestyle have evidentiary support.  This Court is not left with a firm and

definite conviction that a mistake has been made in this regard.  The Court concludes that

the bankruptcy court did not clearly err in its findings concerning Mr. Goodvin's expenses,

---

[3] The Court notes that a modest reduction of this amount in the bankruptcy court's findings – for instance in the amount of $100 per month – would not alter this Court's conclusion that an exception would result in undue hardship here because, as discussed below, Mr. Goodvin would still not be able to pay even the accruing interest on his loans while maintaining a minimal standard of living for most if not all of the repayment period.

and it therefore relies on those findings in determining whether exception of the loans from

discharge would result in undue hardship in this case.

### III.      Satisfaction of the Undue-Hardship Standard

11 U.S.C. § 523(a)(8) excepts from discharge in bankruptcy any student loan debt

unless such exception would impose an "undue hardship" on the debtor. *See id.* The Tenth

Circuit has adopted the three-part *Brunner* test, under which, to show the necessary "undue

hardship" for discharge of student loans, the debtor must show the following:

> (1) that the debtor cannot maintain, based on current income and expenses, a
> "minimal" standard of living for herself and her dependents if forced to repay
> the loans; (2) that additional circumstances exist indicating that this state of
> affairs is likely to persist for a significant portion of the repayment period of
> the student loans; and (3) that the debtor has made good faith efforts to repay
> the loans.

*See ECMC v. Polleys*, 356 F.3d 1302, 1307 (10th Cir. 2004) (quoting *Brunner v. New York*

*State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)). The Tenth Circuit has

cautioned that "an overly restrictive interpretation of the *Brunner* test fails to further the

Bankruptcy Code's goal of providing a 'fresh start' for the honest but unfortunate debtor,

and can cause harsh results for individuals seeking to discharge their student loans." *See*

*id.* at 1308. The Tenth Circuit further explained how the test should be applied as follows:

> We do not read *Brunner* to rule out consideration of all the facts and
> circumstances. Under the first aspect of *Brunner,* the bankruptcy court is to
> inquire about whether the debtor can maintain a minimal standard of living
> while repaying the debt. This evaluation necessarily entails an analysis of all
> relevant factors, including the health of the debtor and any of his dependents
> and the debtor's education and skill level. The second *Brunner* factor
> similarly requires an analysis of all the facts and circumstances that affect
> the debtor's future financial position. Finally, the good faith part includes an

7

analysis of the debtor's situation in order to determine whether he has made a good faith attempt to repay the loan by maximizing income and minimizing expenses.

We therefore join the majority of the other circuits in adopting the *Brunner* framework. However, to better advance the Bankruptcy Code's "fresh start" policy, and to provide judges with the discretion to weigh all the relevant considerations, the terms of the test must be applied such that debtors who truly cannot afford to repay their loans may have their loans discharged. Additionally, we think that the good faith portion of the *Brunner* test should consider whether the debtor is acting in good faith in seeking the discharge, or whether he is intentionally creating his hardship.

The first part of *Brunner*—that the debtor cannot maintain a minimal standard of living while repaying the student loan debt—comports with the legislative policy behind § 523(a)(8), that student loans should not as a matter of policy be dischargeable before the debtor has demonstrated that for any reason he is unable to earn sufficient income to maintain himself and his dependents and to repay the educational debt. This first part should serve as the starting point for the undue hardship inquiry because information regarding a debtor's current financial situation generally will be concrete and readily obtainable.

The second *Brunner* element, which requires that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans, properly recognizes that a student loan is viewed as a mortgage on the debtor's future. However, in applying this prong, courts need not require a "certainty of hopelessness." Instead, a realistic look must be made into [the] debtor's circumstances and the debtor's ability to provide for adequate shelter, nutrition, health care, and the like. Importantly, courts should base their estimation of a debtor's prospects on specific articulable facts, not unfounded optimism, and the inquiry into future circumstances should be limited to the foreseeable future, at most over the term of the loan.

Finally, an inquiry into a debtor's good faith should focus on questions surrounding the legitimacy of the basis for seeking a discharge. For instance, a debtor who willfully contrives a hardship in order to discharge student loans should be deemed to be acting in bad faith. Good faith, however, should not be used as a means for courts to impose their own values on a debtor's life choices.

*See id.* at 1309-10 (internal quotations and citations omitted).

Mr. Goodvin's circumstances as found by the bankruptcy court easily satisfy the requirements of the *Brunner* test if only his present repayment obligations are considered. His disposable income is not nearly enough to meet his repayment obligations, or even to pay only the accrued monthly interest, and thus he cannot repay these loans while maintaining a minimal standard of living. As ECMC notes, Mr. Goodvin's income is set to increase significantly as he completes his apprenticeship, but ECMC does not dispute that even at his full journeyman union pay rate, he would not have enough disposable income even to pay the $503 per month in accruing interest. Moreover, Mr. Goodvin's income will significantly decrease upon retirement. Thus, his inability to repay the loans is likely to persist. Finally, as found by the bankruptcy court, Mr. Goodvin has acted in good faith in seeking to maximize his income, minimize his expenses, and make payments on the loans (he failed to make payments for only a brief period years ago).

ECMC argues, however, that the Court should also consider the availability to Mr. Goodvin of an Income-Driven Repayment (IDR) plan. IDR plans are plans for paying student loans, authorized by the applicable statutes and regulations, that allow the debtor's loans to be consolidated and the debtor to pay an amount (even down to $0) based on his income, calculated by a percentage of the amount by which his AGI exceeds a poverty standard, with the remaining balance wiped away at the end of the payment period. As established in the bankruptcy court, Mr. Goodvin could consolidate his loans through a REPAYE (Revised Pay-As-You-Earn) plan, which would require a present monthly payment of only $157 (which amount would be adjusted every year based on income), with the remaining debt cancelled after 20 years. ECMC argues that if Mr. Goodvin has $209

in disposable income with which to make student loan payments, as found by the bankruptcy court, he could make payments under the REPAYE plan. ECMC thus argues that Mr. Goodvin cannot show that exception from discharge would impose an undue hardship. ECMC is correct that Mr. Goodvin has sufficient income to make payments under this plan, including in the future when his income will increase as a journeyman and then in retirement when the payment amounts will be reduced commensurate with his reduced income, with the loans then canceled after 20 years. Accordingly, this issue of undue hardship turns in this case on the weight to be given the availability of this IDR plan and Mr. Goodvin's failure to take advantage of that plan.

The Court first addresses ECMC's argument that the IDR plan should be considered in applying the first *Brunner* prong. Indeed, if the $157 figure were used, Mr. Goodvin would be unable to satisfy the first prong, as he is able to make such a payment while maintaining a minimal standard of living. The Court declines to consider the IDR plan in considering this prong, however, for a number of reasons.

ECMC cites cases in which district and bankruptcy courts have considered an IDR plan in applying the first *Brunner* prong. The Tenth Circuit, however, has not endorsed such an approach. In *Alderete v. ECMC (In re Alderete)*, 412 F.3d 1200 (10th Cir. 2005), the Tenth Circuit held that participation in a repayment program is an important indicator of good faith, but that such participation is not required to satisfy the good-faith prong of the *Brunner* test. *See id.* at 1206. Thus, the Tenth Circuit has indicated that the availability of an IDR plan should not be dispositive. Moreover, the Tenth Circuit considered that factor under the third prong of the *Brunner* test, not the first prong. If an IDR plan were

10

considered under the first prong, then that plan would prove dispositive whenever the debtor could make the IDR payment (including when the plan's formula called for no payment at all). In addition, ECMC argues that a debtor should participate in an IDR plan to satisfy his obligation to minimize expenses; but in *Polleys*, the Tenth Circuit referenced the minimization of expenses as a factor to be considered under the third prong. *See Polleys*, 356 F.3d at 1309. Moreover, it appears that circuit courts have generally considered an IDR plan under *Brunner*'s third prong. *See* John Patrick Hunt, *Help or Hardship?: Income-Driven Repayment in Student-Loan Bankruptcies*, 106 Geo. L.J. 1287, 1326 & n. 296 (2018).

The Court concludes that this factor is best considered under the third prong, along with all other circumstances bearing on the issue of undue hardship, consistent with the Tenth Circuit's approach, so that the availability of the IDR plan may be given weight but not applied mechanically in such a way that may prove dispositive. That is consistent with the approach adopted by Kansas bankruptcy and district courts in two similar cases, in which the courts refused to allow the availability of an IDR plan to decide the issue under the first prong when payments under that plan would not even meet the interest obligations on the student loans. *See Murray v. ECMC (In re Murray)*, 563 B.R. 52, 50-61 (Bankr. D. Kan. 2016) (Somers, Bankr. J.); *ECMC v. Murray*, 2017 WL 4222980, at *3 (D. Kan. Sept. 22, 2017) (Murguia, J.) (affirming bankruptcy court's ruling for debtor under the *Brunner* test); *Metz v. Navient Educ. Loan Corp. (In re Metz)*, 589 B.R. 750, 758-59 (Bankr. D. Kan. 2018) (Nugent, Bankr. J.); *ECMC v. Metz*, 2019 WL 1953119, at *4-5 (D. Kan. May 2, 2019) (Broomes, J.) (affirming bankruptcy court's ruling for debtor under the *Brunner*

11

test).  Thus, the Court will consider the availability of an IDR plan in this case, but it will weigh that factor along with all other relevant circumstances under *Brunner*'s third prong.

The Court thus concludes that Mr. Goodvin has met his burden to show satisfaction of the first prong of the *Brunner* test.  As noted above, with only $209 in disposable income (as found by the bankruptcy court), Mr. Goodvin cannot even afford an amount that would pay the monthly accrual of interest, let alone pay off the loans entirely.  The Court concludes that Mr. Goodvin has satisfied the second prong as well, as that inability to pay the principal of those loans will likely persist throughout the payment obligation, even when Mr. Goodvin enjoys some years of increased income before he retires.

The Court then turns to the third prong of the *Brunner* test.  In arguing that Mr. Goodvin has not satisfied this prong, ECMC relies almost entirely on Mr. Goodvin's failure to participate in the REPAYE program, which would require payments that Mr. Goodvin could afford and which would result ultimately in the cancellation of the debt.  As noted above, under Tenth Circuit law, such a failure to participate in an IDR plan is an important factor but is not dispositive.  The Court concludes, based on the circumstances present here, that Mr. Goodvin's failure to participate in the IDR plan was reasonable and should not be given controlling weight.

The Court reaches this conclusion for a number of reasons.  First, in warning against "an overly restrictive interpretation of the *Brunner* test" that may cause harsh results, the Tenth Circuit noted that the Bankruptcy Code's goal of providing a "fresh start" for the honest but unfortunate debtor still applies in this context despite the general rule against the discharge of student loans.  *See Polleys*, 356 F.3d at 1308.  Requiring Mr. Goodvin to

continue to carry substantial debt, with that debt growing ever larger under the IDR plan, would thwart the goal of providing Mr. Goodvin a fresh start through bankruptcy.[4]

Second, it is significant that payments under the IDR plan, even after Mr. Goodvin's income has increased, would not even pay the interest accruing each month on his loans. That negative amortization, with the debts actually increasing during participation in the plan, makes participation less palatable.

Third, as noted by the Tenth Circuit in *Polleys*, "Section 523(a)(8) was designed to remove the temptation of recent graduates to use the bankruptcy system as a low-cost method of unencumbering future earnings." *See id.* at 1306. That purpose for the general rule of nondischargeability of student loans would not be furthered here by exception from discharge because Mr. Goodvin is not a recent graduate attempting to abuse the student loan system. The majority portion of his student loan debt is owed on a consolidation loan made almost 30 years ago. This factor thus favors discharge over requiring participation in the proposed IDR plan.

Fourth, the bankruptcy court did not find that Mr. Goodvin has been attempting to abuse the student loan system or avoid payment of his student loan debt. As the bankruptcy court found, Mr. Goodvin has made payments on his loans fairly consistently for the last 30 years, and he did take advantage of an IDR PLAN with respect to one of his DOE loans. Mr. Goodvin testified that he had not participated in the REDEYE plan because his

---

[4] In addition, one purpose of bankruptcy is to allow the debtor more easily to contribute to the economy, and that purpose would be furthered by discharge here. *See* Hunt, *supra*, at 1299-1300.

payments under that plan would not even pay down the principal of his debt and he would still be living under a substantial debt.  Such thinking is not unreasonable in these circumstances, and thus Mr. Goodvin's motivation for failing to participate in an IDR plan does not weigh against discharge here.  *See Polleys*, 356 F.3d at 1310 ("an inquiry into a debtor's good faith should focus on questions surrounding the legitimacy of the basis for seeking a discharge").

Finally, the Court notes that other considerations have been cited by courts in finding undue hardship despite the debtor's failure to participate in an available IDR plan. For instance, although the student loan debt might eventually be cancelled under an IDR plan, the debtor is forced to remain in debt in the meantime, and such debt may affect the availability of housing or credit.  *See, e.g.*, *Murray*, 563 B.R. at 60; *Durrani v. ECMC (In re Durrani)*, 311 B.R. 496, 508 (Bankr. N.D. Ill. 2004), *aff'd*, 320 B.R. 357 (N.D. Ill. 2005). Carrying such debt can also exact an emotional and psychological toll on the debtor.  *See e.g.*, *Durrani*, 311 B.R. at 508.  Moreover, if the availability of an IDR plan, especially one with a low payment, makes it effectively impossible to show undue hardship, then this statutory opportunity for relief is effectively being denied to the most indigent debtors who most need such relief and for whom the undue hardship provision was created.  *See, e.g.*, *Nightingale v. ECMC (In re Nightingale)*, 529 B.R. 641, 650 (Bankr. M.D.N.C. 2015).[5]

---

[5] In addition, numerous courts have cited the fact that the debtor may have to pay a significant amount of income tax when the remaining debt is forgiven.  *See, e.g.*, *Durrani*, 311 B.R. at 508.  ECMC points out that no such tax is owed if the debtor is insolvent immediately prior to the loan forgiveness, as will be the case for many debtors with significant student loans, and it argues that the Court should not speculate about the state Continued…

ECMC argues that Mr. Goodvin can afford to pay something toward his student loan debt, and that such payments would provide at least some recovery for the holders of the loans.  That small recovery, however, does not overcome the other considerations weighing in favor of discharge here, as discussed above.

The Court also notes that its conclusion is consistent with those reached in similar cases by other federal courts in this district.  In *Murray*, the bankruptcy court, in concluding that an exception to discharge would impose an undue hardship, relied on the facts that the debtor could not repay his student loans and that payments under the suggested IDR plan – which the court deemed an unproductive alternative – would not even pay the interest. *See Murray*, 563 B.R. at 59-60, 62.  In affirming that judgment, the district court noted that the debtors were not freshly-graduated young people seeking to discharge their loans, and it emphasized the fact that payments under the IDR plan would not be sufficient to pay even the accrual of additional interest, in contravention of the purpose of bankruptcy.  *See* 2017 WL 4222980, at *3, 5.

In *Metz*, the bankruptcy court agreed with ECMC that the debtor could pay something towards her debt, but it stated that that something "should have a meaningful positive effect on her financial situation," meaning "she should be able to reduce the debt – not simply service it."  *See Metz*, 589 B.R. at 756.  The debtor there could pay the IDR

---

of the debtor's finances 20 years in the future.  Nevertheless, there is at least the potential that Mr. Goodvin would suffer a tax liability from the eventual cancellation of his debt if he were to participate in the REPAYE plan.  Indeed, at oral argument before the bankruptcy court, ECMC's counsel conceded that such a possibility was more likely to occur in his case than in most other bankruptcies.

amount, although that amount would yield a negative amortization and thus not even service the debt, but the court stated that that did not end the discussion because Tenth Circuit law requires a consideration of all facts and circumstances, not just whether minimum payments can be made. *See id.* at 758. The court concluded that use of the IDR plan, with the debt growing, would not give the debtor a fresh start. *See id.* The district court affirmed. *See* 2019 WL 1953119, at \*4-7. The court noted that IDR plan participation is not required under *Alderete* and that the Tenth Circuit has stressed the fresh start policy in this context. *See id.* at \*5. The court noted ECMC's argument that the debt would eventually be forgiven without tax consequences under the IDR plan, but it nevertheless concluded that because the debt would be growing, the debtor's fresh start would be thwarted. *See id.* The court thus ruled that the third *Brunner* prong was satisfied, and it concluded that the undue-hardship test was satisfied despite the availability of the IDR plan. *See id.* at \*7.

The reasoning of these courts is persuasive. For the reasons discussed above and in the Kansas cases, the Court concludes that Mr. Goodvin was justified in seeking discharge instead of participating in the IDR plan, and thus the Court does not give great weight to the failure to participate in considering the third *Brunner* prong. All other circumstances favor discharge here. The bankruptcy court found that Mr. Goodvin's checkered employment history was not his fault, that he did always try to find good employment, that he even changed his career late in life to try to earn more, that he lives frugally, that he has almost always made payments on the loans, and that he did participate in one IDR plan to receive better terms on his DOE loans. Those findings are unchallenged, except with

respect to the specific expense items addressed above.[6] Mr. Goodvin is not someone who has willfully contrived a hardship in order to have his student loans discharged. *See Polleys*, 356 F.3d at 1310 (describing the inquiry under the third prong). The Court concludes that Mr. Goodvin has made good faith efforts to repay his loans, and he has therefore satisfied the third *Brunner* prong.

Accordingly, the Court concludes that Mr. Goodvin has satisfied his burden with respect to all three prongs of the *Brunner* test. The Court therefore affirms the bankruptcy court's ruling that exception of Mr. Goodvin's student loan debts from discharge would impose an under hardship under Section 523(a)(8).


### IV.   <u>Partial Discharge</u>

After concluding that excepting Mr. Goodvin's student loan obligations from discharge would result in undue hardship for him, the bankruptcy court ruled that it would discharge the obligation on the 1992 consolidation loan held by ECMC, but would except from discharge the obligations on ECMC's other loan and on DOE's loans. On appeal to this Court, ECMC challenges the method by which the bankruptcy court effected that partial discharge.

In *Alderete*, the Tenth Circuit effectively sanctioned the use by a bankruptcy court of its equitable powers under 11 U.S.C. § 105 to effect a partial discharge of student loan

---

[6] ECMC does argue summarily with respect to the third prong that Mr. Goodvin did not minimize his expenses in good faith. The bankruptcy court did not clearly err, however, in finding that Mr. Goodvin's expenses were not excessive.

debt, but it held that a bankruptcy court cannot wield such power for that purpose unless

Section 523(a)(8)'s undue-hardship standard has been satisfied. *See Alderete*, 412 F.3d at

1207. As discussed above, this Court affirms the bankruptcy court's conclusion that such

undue hardship has been established in this case. Thus, the bankruptcy court was

empowered to effect a partial discharge of Mr. Goodvin's student loan obligations. This

Court reviews that exercise of equitable powers under § 105(a) for abuse of discretion. *See*

*Rafter Seven Ranches L.P. v. WNL Investments L.L.C. (In re Rafter Seven Ranches L.P.)*,

414 B.R. 722, 731 (B.A.P. 10th Cir. 2009).

ECMC does not dispute that the bankruptcy court had the power to effect a partial

discharge. Nor does ECMC take issue with the magnitude of the partial discharge as it

relates to Mr. Goodvin's total student loan debt. Rather, ECMC argues only that the

bankruptcy court abused its discretion by discharging only the obligation on one loan

instead of spreading the partial discharge on a pro rata basis among all loans held by ECMC

and DOE. ECMC argues that fairness required equal treatment of the two creditors.

The Court concludes that the bankruptcy court did not abuse its discretion by

discharging the debt on the one loan. First, defendant has not provided any authority

indicating that a pro rata partial discharge is required. To the contrary, the cases cited by

defendant make clear that no particular methodology is required. In *Raimondo v. New York*

*State Higher Education Services Corp. (In re Raimondo)*, 183 B.R. 677 (Bankr. W.D.N.Y.

1995), the court concluded that a pro rata partial discharge was appropriate under "peculiar

facts" of that case. *See id.* at 680-81. The court did not conclude, however, that a pro rata

discharge was required; rather, it noted that Section 523(a)(8) does not preclude any

particular division of loans into dischargeable and nondischargeable parts in order to placate the commands of equity. *See id.* at 681. Similarly, in *Nary v. The Complete Source (In re Nary)*, 253 B.R. 752 (N.D. Tex. 2000), the district court affirmed the bankruptcy court's pro rata partial discharge. *See id.* at 769-70. Citing *Raimondo*, the court concluded that the bankruptcy court had not clearly erred in finding that no fact or circumstance warranted the disparate treatment of lenders in that case and that the selection of a single loan obligation to discharge would be arbitrary there. *See id.* at 769. The court made clear, however, that a pro rata method of effecting a partial discharge is not required, as follows:

> To affirm pro rata allocation, of course, is not to command it. In the present case, as in *Raimondo*, the bankruptcy court found no fact or circumstance to justify disparate treatment among the lenders. On appropriate facts, a bankruptcy court can allocate recoveries to multiple creditors using other fair and equitable methodologies.

*See id.* at 770 (citation omitted).[7]

Second, unlike *Nary* and *Raimondo*, the present case does involve circumstances that provide a basis for singling out one loan for discharge. As the bankruptcy court explained, the 1992 consolidation loan is much older than the other loans; that loan accrues interest at a much higher rate; and more is presently owed on that loan than on any other loan. Of the $77,270 owed by Mr. Goodvin, $49,581 (64%) is attributed to the 1992 loan, with interest accruing at $372 per month (74% of the $503 total monthly accrued interest). This is so even though Mr. Goodvin's payments on that loan ($19,527) have substantially

---

[7] In a third case cited by ECMC, a bankruptcy court simply cited *Raimondo* and *Nary* without analysis in choosing to do a pro rata partial discharge, but it did not indicate that such a methodology was required. *See Nixon v. Key Educ. Resources (In re Nixon)*, 453 B.R. 311, 336 (Bankr. S.D. Ohio 2011).

exceeded the principal amount of the loan ($12,077). It is this loan that drives the conclusion of undue hardship in this case. That singular impact on Mr. Goodvin's financial situation provides a rational basis for discharging only that loan, and the Court thus concludes that the bankruptcy court did not abuse its discretion in this regard.


IT IS THEREFORE ORDERED BY THE COURT THAT the decision of the bankruptcy court as set forth in its Memorandum Opinion of September 1, 2020, is hereby **affirmed**.

IT IS SO ORDERED.

Dated this 17th day of March, 2021, in Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge